39 So.3d 711 (2010)
Robin HAIK
v.
ALLSTATE INSURANCE COMPANY and Gregory D. Beisel.
No. 2009-CA-0860.
Court of Appeal of Louisiana, Fourth Circuit.
March 31, 2010.
Rehearing Denied July 21, 2010.
*713 Lloyd S. Jolibois, Jr., Stuart H. Smith, Michael G. Stag, Catherine B. Cummins, Smith Stag, L.L.C., New Orleans, LA, for Plaintiff/Appellee.
Paul A. Tabary III, Lacey Tabary, Dysart & Tabary, L.L.P., Chalmette, LA, for Defendant/Appellant, Gregory D. Beisel.
(Court composed of Judge TERRI F. LOVE, Judge DAVID S. GORBATY, Judge ROLAND L. BELSOME).
ROLAND L. BELSOME, Judge.
Defendant-Appellant Gregory D. Beisel appeals the trial court's award of damages in favor of Plaintiff-Appellee. We find that the trial court was not manifestly erroneous or clearly wrong and affirm.

FACTS AND PROCEDURAL HISTORY
On October 1, 1999, Plaintiff-Appellee Robin Haik was involved in an automobile accident with two other vehicles, one of which was operated by Defendant-Appellant Gregory Beisel, on Louisiana Highway 406 in Plaquemines Parish. The trial court found that evidence at the scene indicated Appellant's vehicle, a green Pontiac, crossed over the center line into oncoming traffic and struck Ms. Haik's vehicle, a brown Chevrolet, ejecting her from the vehicle. As a result of the accident, Ms. Haik sustained injuries to her spine, shoulders, chest, legs, and arms; lost several teeth; received numerous stitches and staples to her head; and remained in a coma for two weeks. As a result of her facial injuries sustained in the accident, Ms. Haik's speech and facial appearance were altered. Ms. Haik also testified that she believed her injuries and inability to care for herself after the accident ultimately resulted in the end of her marriage.
Ms. Haik and Louisiana State Trooper Robert Harris both testified at trial. Ms. Haik testified with respect to her medical records, expenses, and employment records, and Trooper Harris, who was certified as an accident reconstructionist at the time of trial, testified regarding his crash report and survey of the accident scene. He also testified with regard to his interviews with Mr. Beisel and Christopher Matton,[1] a passenger in the third vehicle involved. Mr. Matton related to Trooper Harris that on the date of the accident, he was traveling east on LA 406 behind Mr. Beisel's vehicle, which he observed cross over the center line into the westbound lane, striking Ms. Haik's vehicle. After conducting this survey and review, Trooper Harris testified that the evidence indicated that Mr. Beisel had crossed the center line into Ms. Haik's lane of travel, colliding with her vehicle, in turn causing *714 her vehicle to strike Mr. Matton's vehicle.[2]
Appellant did not appear at trial, and presented no evidence or witnesses. On March 10, 2008, the court, ruling from the bench, found Appellant 100% liable for the accident, awarding Ms. Haik $1,100,000, less a $16,666.66 credit for a prior payment. Appellant filed a Rule for Remittitur and Alternatively, For New Trial on April 14, 2008.[3] After a hearing on Appellant's the Rule for Remittitur/New Trial, the trial court denied same on December 15, 2008. This appeal followed.

STANDARD OF REVIEW
It is well-settled in Louisiana that under the manifest error standard of review, a factual finding cannot be set aside unless the appellate court determines that it is manifestly erroneous or clearly wrong. Salvant v. State, 2005-2126, p. 5 (La.7/6/06), 935 So.2d 646, 650 (citing Smith v. Louisiana Dept. of Corrections, 93-1305 (La.2/28/94), 633 So.2d 129, 132; Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880, 882 (La. 1993); and Rosell v. ESCO, 549 So.2d 840, 844 (La.1989)). Accordingly, to reverse a factfinder's determinations, an appellate court must review the record in its entirety and find not only that a reasonable factual basis does not exist, but also that the record establishes the factfinder is clearly wrong or manifestly erroneous. Id.
Likewise, an appellate court cannot re-weigh the evidence or substitute its own factual findings because it would have decided the case differently. Id.; Pinsonneault v. Merchants & Farmers Bank & Trust Co., 01-2217 (La.4/3/02), 816 So.2d 270, 278-79. Where there are two permissible views of the evidence, the factfinder's determinations cannot be manifestly erroneous or clearly wrong; however, where documents or objective evidence so contradict the witness's story, a court may find manifest error. Salvant v. State, 2005-2126, p. 5, 935 So.2d at 650 (citing Rosell, supra at 844-45). Conversely, where such factors are not present, and a factfinder's determination is based on its decision to credit the testimony of one or more witnesses, "that finding can virtually never be manifestly erroneous or clearly wrong." Id; see also Rosell v. ESCO, 549 So.2d 840 (La.1989).
With respect to damage awards, a trial court is afforded vast discretion in making such determinations, and such findings shall not be disturbed absent an abuse of discretion. Wainwright v. Fontenot, 00-0492, p. 6 (La.10/17/00), 774 So.2d 70, 74.

DISCUSSION

Assignment of Error #1
In his first assignment of error, Appellant argues that the trial court erred in finding Defendant liable because facts regarding the accident remain in dispute.
First, Appellant argues that Trooper Harris was not certified in accident reconstruction as of the date he investigated the accident, and therefore, it was error for the trial court to allow him to offer his opinion at trial as to how the accident occurred; thus, how the accident occurred is still in dispute. In support of his proposition, Appellant relies upon Maricle, et al. v. Liberty Mutual Insurance Company, et al, 2004-1149 (La.App. 3 Cir. 3/2/05), 898 So.2d 565, which found that a trooper's testimony should have been limited to *715 opinions based on perceptions of facts and recollections pertaining to the accident scene and that he should not have been allowed to testify as to his opinion of the cause of the accident.
We find that Appellant's reliance upon Maricle is misplaced. In Maricle, a "rather inexperienced" officer testified who was not an expert in accident reconstruction. Maricle, 898 So.2d at 573-74. On appeal, the court found it was error to allow testimony from a non-expert investigating officer.[4]Id. at 574. Similarly, Yellott v. Underwriters Insurance Company, also cited by Appellant, is distinguishable from the facts of this case, as the officer who testified regarding fault was not tendered as an expert witness. Yellott v. Underwriters Insurance Company, 2004-1342, p. 10-11 (La.App. 3 Cir. 8/31/05), 915 So.2d 917, 925-26. The Yellott Court found that it was prejudicial error to allow opinion testimony from the non-expert officer. Id. Appellant also relies upon Baker v. D.H. Holmes Company, Ltd. In Baker, in contrast to the instant case, the investigating officer was not qualified as an expert witness, but testified as a lay witness. Baker v. D.H. Holmes Company, Ltd., 285 So.2d 282 (La.App. 4th Cir.1973). This Court concluded that as a lay witness, the trooper's statements should have been confined to the facts that he perceived. 285 So.2d at 286. Accordingly, Baker is also plainly distinguishable from the facts of the instant case.[5] In the case sub judice, not only was Trooper Harris certified in accident reconstruction at the time of trial, but the trial court also qualified him as an expert in accident investigation. Moreover, Trooper Harris was an officer in the Gretna Police Department for a year and a half before becoming a trooper with the Louisiana State Police, further differentiating him from the inexperienced officer in Maricle.
With regard to qualifying experts, this Court has recognized that a trial court "has great discretion in deciding which witnesses are qualified as experts, and the breadth and scope of expert testimony." La. C.E. art. 702 Comment (d); Pereira v. Louisiana Coca-Cola Bottling Co., 620 So.2d 315, 319 (La.App. 4th Cir.1993). In its Reasons for Judgment, the trial court specifically noted that Trooper Harris was qualified by the court as an expert in accident investigation based upon his education and experience. At trial, Trooper Harris testified that he received training at the Northwestern Traffic Police Officer Training for Accident Reconstruction, a nine-week course, and was a certified accident reconstructionist. Additionally, Trooper Harris testified regarding his training in accident investigation prior to the accident at both the Gretna Police Department and the Louisiana State Police Training Academy.
Accordingly, because the trial court qualified Trooper Harris, who was certified *716 in accident reconstruction at the time of trial, as an expert in accident investigation, we find that the trial court properly allowed Trooper Harris to testify regarding his opinion as to the cause of the accident. Louisiana Code of Evidence Article 702 provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." La. C.E. art. 702. In this case, Trooper Harris' knowledge and experience qualified him to testify as an expert, and his testimony was instructive to the factfinder. See Hunter v. City of Shreveport, 41,192, p. 10 (La. App. 2 Cir. 6/28/06), 935 So.2d 300, 306. Most significantly, Trooper Harris had the knowledge and experience as a certified accident reconstructionist at the time of trial, at which time he provided his expert opinion, and his conclusions regarding causation were not refuted by Appellant.
Additionally, in Kraemer v. Joseph, 04-270, p. 8 (La.App. 5 Cir. 9/28/04), 885 So.2d 22, 26, the Court held that it was not error for a non-expert police officer to testify as to his opinion regarding the cause of the accident. The court found that "[a]lthough [the officer] reached a conclusion based on this investigation as to who he believed was at fault in the accident, this opinion was rationally based on the perception of the witness and did not constitute impermissible expert testimony." Id. Similarly, in this case, although Trooper Harris was also accepted by the court as an expert, his conclusions were plainly based upon his perception of the evidence and each of the witnesses. See id.; see also La. C.E. art. 701.[6]
Appellant also argues the trial court erroneously allowed Trooper Harris to testify regarding the contents of Christopher Matton's out-of-court statement[7] because Mr. Matton was a third party who was not present for trial. Thus, Appellant argues, Mr. Matton's statement was inadmissible hearsay because it was offered to prove the truth of the matter asserted, and Article 804(A) of the La.Code of Evidence is inapplicable because the trial court did not make a determination that the declarant was unavailable as a witness.[8]
We find that the district court properly allowed Trooper Harris to testify regarding his interview with Mr. Matton pursuant to La.Code of Evidence article 703.[9] As an expert accepted by the court, Trooper Harris could testify with respect to facts or data not necessarily admissible in evidence. See La. C.E. art. 703. Moreover, *717 despite Appellant's argument to the contrary, the Reasons for Judgment are void of any specific reliance upon Mr. Matton's statement; the trial court simply notes that Trooper Harris arrived at his conclusions after surveying the scene, including marks on the roadway, and collecting statements from other drivers and passengers. Accordingly, the alleged error in allowing Trooper Harris to testify regarding his interview with Mr. Matton, if any, was harmless. See State v. Spell, 399 So.2d 551, 556 (La.1981); State v. Wallace, 2003-0193, p. 18 (La.App. 4 Cir. 11/26/03), 862 So.2d 286, 299.
Finally, Appellant argues that he should not have been found 100% at fault in the accident. Appellant submits that Trooper Harris' opinion as to the cause should not have been admitted, and that his liability was thus not demonstrated by a preponderance of the evidence. Additionally, Appellant argues that facts regarding the accident are in dispute, such as Appellant's denial of crossing the center line, and Ms. Haik's inability to recall precisely how the accident occurred.
Where there are two permissible views of the evidence, the factfinder's determinations cannot be manifestly erroneous or clearly wrong. Salvant v. State, 2005-2126, p. 5, 935 So.2d at 650. We find that the court's liability determinations are entirely supported by the record. In its Reasons for Judgment, the trial court noted that Mr. Beisel's account of the accident was inconsistent, as he provided a total of four[10] different accounts of the facts of the accident; that Mr. Beisel's vehicle did not evidence any white paint transfer; and that Ms. Haik's vehicle had scrape marks down the left side behind the front tire, and green paint transfer. Accordingly, even without Trooper Harris' testimony with respect to the cause of the accident, Appellant's liability in crossing the center line was established by a preponderance of the evidence. Appellee met her burden of proof in demonstrating that Appellant's negligence, more probably than not, caused her injuries.[11]

Assignment of Error #2
In his second and final assignment of error, Appellant argues that the trial court's ruling on damages was reversible error because the court did not adequately review Ms. Haik's extensive medical records and bills. The records, Appellant asserts, were submitted over objection, and the court's findings with regard to damages should be reversed.
*718 As previously noted herein, it is well-settled that a trial judge has wide discretion with respect to its assessment of damages, and such assessment is entitled to great deference upon review. La. C.C. art. 2324.1; Guillory v. Lee, 2009-0075, p. 14, (La.6/26/09), 16 So.3d 1104, 1116. Counsel for Ms. Haik introduced and filed into evidence certified medical records from each healthcare provider[12] and billing statements for each. Moreover, a review of the record evidences that Ms. Haik testified at length regarding the scarring, injuries and damages, both mental and physical, that she sustained as a result of the accident; the surgeries and treatment she received for each of those injuries; and the medical records and the amount of each billing statement from each healthcare provider. This assignment of error lacks merit.

CONCLUSION
For the foregoing reasons, the trial court's judgment is affirmed.
AFFIRMED.
GORBATY, J., dissents with reasons.
GORBATY, J., dissents, with reasons.
Because I find the trial court committed clear error, I respectfully dissent.
In the instant case, the only two persons to testify at trial were Trooper Robert Harris and the plaintiff. The plaintiff had no recollection of how the accident happened; she testified mainly about her medical and recovery history. Louisiana State Trooper Harris, who was not recognized as an expert in accident reconstruction by the trial court, was nonetheless allowed to testify as to his opinion on causation. This was prejudicial error.
In Maricle v. Liberty Mutual Ins. Co., 04-1149 (La.App. 3 Cir. 3/2/05), 898 So.2d 565, the Third Circuit held that a non-expert investigating officer should not be allowed to offer opinions on crucial facts determinative of liability. Also see, Yellott v. Underwriters Ins. Co., 04-1342 (La.App. 3 Cir. 8/31/05), 915 So.2d 917, Baker v. D.H. Holmes Co., Ltd., 285 So.2d 282 (La. App. 4 Cir.1973).
Here, the trial court refused to recognize Trooper Harris as an expert in accident reconstruction despite his having become certified in accident reconstruction at the time of trial. The trial court clearly recognized that at the time he investigated the subject accident, he was not qualified to formulate an opinion as to causation. Notwithstanding this finding, the trial court proceeded to allow Trooper Harris to testify as to how he believed the accident occurred. Because Trooper Harris did not witness the accident, his testimony should have been limited to relating the facts that he gathered during his investigation.
The trial court stated in its reasons for judgment that it relied on Trooper Harris' opinion as to how the accident occurred, and in finding defendant 100% at fault. This constitutes error.
In addition to his testimony concerning causation, Trooper Harris was allowed to introduce hearsay, specifically, what he was told by a third party at the scene. This third-party hearsay testimony was offered to prove the "facts" according to Trooper Harris. This was inadmissible hearsay because the defendant was not able to cross-examine the third party.
*719 Lastly, although confronted with voluminous medical records and invoices, the trial court ruled from the bench, without reviewing the submitted medical evidence. Merely considering the plaintiff's testimony as to her physical condition is insufficient to make an award of $1.1 million without a considered examination of the evidence.
Accordingly, I would reverse the ruling of the trial court and remand for a new trial.
NOTES
[1] Mr. Matton was not a party to the lawsuit.
[2] Trooper Harris testified that he found no evidence that Ms. Haik had crossed the center line prior to impact.
[3] On June 6, 2008, the trial court issued Reasons for Judgment.
[4] The Second Circuit found Maricle inapplicable to a similar fact pattern in which an officer was permitted to testify at trial as an expert regarding the cause of the accident in Hunter v. City of Shreveport, 41,192 (La.App. 2 Cir. 6/28/06), 935 So.2d 300. In Hunter, the Court noted at the outset that the trial court is allowed wide discretion in permitting witnesses to testify. Hunter, 41,192, p. 9, 935 So.2d 300, 305. The testifying officer had 19 years of experience and was certified in vehicle investigation; therefore, the Court held that "when taken as a whole, [the officer's] experience and education qualified [the officer] to testify as an expert." Id. at 305-06. The Court concluded that the Maricle Court found prejudicial error from the officer's testimony regarding causation based primarily upon the officer's lack of experience, as the officer in Maricle had graduated from the academy six months before the accident. Id.
[5] In contrast to the case sub judice, Maricle, Yellott, and Baker were jury trials.
[6] If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are:

(1) Rationally based on the perception of the witness; and
(2) Helpful to a clear understanding of his testimony or the determination of a fact in issue.
La. C.E. art. 701.
[7] The statement was part of Trooper Harris' accident report.
[8] Appellant also argues that Appellee waived her Motion in Limine regarding the admissibility of out of court statements because the motion was not heard prior to trial and never ruled upon by the trial court.
[9] Louisiana Code of Evidence Article 703 provides that "facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing" and that the facts or data do not need to be admissible in evidence if they are "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." La. C.E. art. 703.
[10] In its Reasons for Judgment, the trial court noted that Mr. Beisel's four accounts of the accident were as follows:

1. Mr. Beisel stated that he was traveling eastbound on LA 406 and as he traveled around the curve, a white pickup truck, traveling westbound, hit his vehicle, causing him to lose control and slide off the roadway. Mr. Beisel also stated that he did not know where the brown Chevrolet (Ms. Haik's vehicle) came from.
2. Mr. Beisel stated that he was traveling eastbound on LA 406 and as he approached the curve, he noticed two vehicles traveling westbound. Mr. Beisel stated that one of the vehicles clipped him, causing him to lose control.
3. Mr. Beisel stated that a brown Chevrolet that was traveling westbound came into his lane, struck his vehicle and caused him to lose control. Mr. Beisel also stated that he did not know where the white pickup truck came from.
4. In his written statement, Mr. Beisel stated that he slowed down as he went into the curve because of the threat of cars changing lanes to pass. While in the curve, he was clipped by one of the two cars. He stated that he was confused about which one hit him because he did not see what car connected with his.
[11] As previously noted, Appellant presented no evidence or witnesses at trial.
[12] Counsel for Ms. Haik introduced and filed into evidence certified medical records from Charity Hospital, LSU Health Sciences Center, Stan P. Crowley, D.D.S., Resurgens Orthopedics, Southern Crescent Neurological Clinic, Tulane Trauma Center Physicians at Charity Hospital, Earl K. Long Medical Center, and Family Medical Center in Georgia.